CANEL AND HALE, LTD., Plaintiff-Appellant and Cross-Appellee, v. MARY P. TOBIN *et al.*, Indiv. and as Co-Guardians of the Estate of Addean Crockett, a Disabled Person, and as Co-Adm'rs of the Estate of Addean Crockett, Deceased, *et al.*, Defendants-Appellees and Cross-Appellants.

First District (1st Division)    No. 1—98—1636

Opinion filed April 12, 1999.—Rehearing denied June 3, 1999.

Law Offices of Jack Joseph, of Chicago (Jack Joseph, of counsel), for appellant.

Connelly & Schroeder, of Chicago (Michael P. Connelly, Thomas F. Tobin, and Carla Summers, of counsel), for appellees.

JUSTICE GALLAGHER delivered the opinion of the court:

Canel & Hale, Ltd. (plaintiff), brought this action to recover fees for legal services rendered to the estate of Addean Crockett, a disabled person, and for punitive damages. Mary P. Tobin, Aera Crockett, Annette Crockett-Cotton and Munday & Nathan (defendants) moved to dismiss the third amended verified complaint pursuant to sections 2—615 and 2—619 of the Code of Civil Procedure (735 ILCS 5/2—615, 2—619 (West 1994)). Defendants also moved for Supreme Court Rule 137 (155 Ill. 2d R. 137) sanctions premised upon plaintiff's failure to comply with prior court orders and instructions regarding the amendment of plaintiff's previous complaints. Plaintiff also moved for Supreme Court Rule 137 sanctions based upon defendants' motion for sanctions.

The trial court dismissed plaintiff's third amended verified complaint with prejudice pursuant to section 2—615, for plaintiff's failure to state a cause of action. Subsequently, the court gave plaintiff leave to file a fourth amended complaint; however, plaintiff elected to stand on the legal sufficiency of its third amended complaint and moved the court to rule on defendants' section 2—619 motion to dismiss. The trial court declined to rule on defendants' section 2—619 motion to dismiss and denied both parties' motions for sanctions.

Plaintiff appeals the portion of the order granting defendants' section 2—615 motion to dismiss, alleging: (1) the trial court erred in finding plaintiff's third amended complaint failed to state a cause of action pursuant to section 2—615, specifically claims for (a) *quantum meruit*; (b) breach of contract; (c) breach of fiduciary duty; (d) interference with a contractual relationship and prospective economic advantage; (e) conspiracy; and (f) punitive damages. Furthermore, plaintiff alleges the trial court erred in declining to rule on defendants' section 2—619 motion and that this court should deny it.

■ Since plaintiff failed to address the denial of its motion for sanctions in its brief to this court, it has waived this issue on appeal. See *People v. Wendt*, 163 Ill. 2d 346, 351, 645 N.E.2d 179, 181 (1994) ("points not raised or argued in an opening appellate brief are waived"); see 134 Ill. 2d R. 341(e)(7). Defendants filed a cross-appeal from the portion of the order denying their motion for Rule 137 sanctions.

Subsequently, plaintiff brought a motion to expunge defendants' cross-appeal due to lack of jurisdiction and defendants brought a motion to strike portions of plaintiff's brief. Both motions were taken with the case.

On July 29, 1992, Addean Crockett underwent a surgical procedure that rendered her unable to care for herself. Attorney Mary Tobin (defendant Tobin) referred Addean's daughters, Aera Crockett and Annette Crockett-Cotton (the Crocketts), to plaintiff to pursue a medical malpractice case for Addean's injuries.

On May 4, 1993, the Crocketts were appointed coguardians of the estate of Addean Crockett. On June 3, 1993, the Crocketts signed a fee disclosure form that also discussed the responsibilities of defendant Tobin and plaintiff to the Crocketts. On June 14, 1993, the Crocketts, as coguardians, signed the retainer agreement to employ plaintiff to pursue their medical malpractice case.

In September 1993, the Crocketts, as coguardians, discharged plaintiff and retained the law firm of Munday & Nathan to prosecute their malpractice case. Defendant Tobin's brother, James Tobin, was an associate attorney at Munday & Nathan.

On July 12, 1994, Addean Crockett died. The Crocketts were appointed coadministrators of her estate. In October 1996, Munday & Nathan reached a settlement with the defendants in that case. As a result, approximately $342,500 was available under court rules and law for attorney fees. The parties in this action were unable to agree upon a division of the fees. On December 10, 1996, plaintiff filed the present lawsuit seeking its share of the fees and punitive damages.

Prior to reaching the merits of the plaintiff's arguments on appeal, we must initially address one of the motions that has been taken with the case. The defendants filed a motion seeking to strike the statement of facts in the plaintiff's brief for the following reasons: (1) it includes argument and comment; (2) it contains information that is not found on the face of the third amended complaint; and (3) it includes information that is not included in the record.

■ Supreme Court Rule 341(e)(6) provides, in part, that the statement of facts section of an appellate brief "shall contain the facts necessary to an understanding of the case, stated accurately and fairly

without argument or comment." 145 Ill. 2d R. 341(e)(6). Defendants are correct in objecting to plaintiff's statement of facts in this case. Many of the questionable remarks were taken verbatim from plaintiff's third amended complaint and thus were combative. However, portions of plaintiff's statement of facts do comply with Rule 341(e)(6). Regardless, plaintiff's argumentative remarks and comments did not interfere with this court's review of the case since this court has made an effort to view plaintiff's statement of facts objectively. "Where violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted." *Cottrill v. Russell*, 253 Ill. App. 3d 934, 938, 625 N.E.2d 888, 890 (1993). Under the circumstances in this case, the statement of facts need not be stricken, but the remarks in question will simply be disregarded. ·

■ Defendants next argue that plaintiff's statement of facts should be stricken because it contains information that is not found on the face of the third amended complaint. We find no rule or authority that requires a complainant to state facts only found in a prior complaint. Therefore, the statement of facts need not be stricken for this reason.

Finally, defendants argue plaintiff's statement of facts should be stricken because it contains comments and statements not found in the record. While we do not condone the type of careless disregard for the supreme court rules evidenced by plaintiff's brief, due to the relative simplicity of the record before us, we elect to consider the merits of this appeal. Nevertheless, any inappropriate or unsupported statements in reviewing this matter will be disregarded by this court. See *Falk v. Martel*, 210 Ill. App. 3d 557, 559, 569 N.E.2d 248, 249-50 (1991). The motion to strike is denied.

Next, we will consider whether count I of plaintiff's third amended complaint states a cause of action for *quantum meruit* recovery. Defendants argue that plaintiff failed to provide the requisite factual support to sustain a claim for *quantum meruit* recovery in its third amended complaint. Specifically, defendants contend that "plaintiff does not state that it performed certain services. Nor does the plaintiff allege how such services benefitted the defendants, or how the services advanced the underlying medical malpractice claim." Plaintiff alleges that it "performed all obligations required of plaintiff to be performed under the terms of said agreement, *i.e.*, to prosecute the Crocketts' medical malpractice claim on behalf of Addean Crockett."

The trial court properly dismissed count I of plaintiff's third amended complaint concerning *quantum meruit* recovery pursuant to section 2—615 since plaintiff failed to plead sufficient facts to allow the trial court to determine whether plaintiff would be entitled to recover. However, from a review of the pleadings and the record, we

have concluded that the *quantum meruit* count in plaintiff's second amended complaint was improperly criticized by the court, which led to its abandonment. In fact, plaintiff's second amended complaint was forsaken after the trial court admonished plaintiff that it was too specific. According to plaintiff, the trial court viewed the second amended complaint as "impermissibly telling a story" or "pleading surplusage." For the reasons stated below, we allow plaintiff the opportunity to file a fourth amended complaint on the issue of *quantum meruit*.

■ In reviewing the dismissal of a complaint, the court must take all well-pled facts as true (*Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329, 371 N.E.2d 634, 639 (1977)) and must draw all reasonable inferences from those facts that are favorable to the pleader (*Your Style Publications, Inc. v. Mid Town Bank & Trust Co.*, 150 Ill. App. 3d 421, 424, 501 N.E.2d 805, 807 (1986)). Dismissal of a cause of action on the pleadings is proper only where it is clearly apparent that no set of facts can be proven entitling the plaintiff to recover. *Illinois Graphics Co. v. Nickum*, 159 Ill. 2d 469, 483, 639 N.E.2d 1282, 1288-89 (1994).

■ Generally, the rule is that " '[w]here an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn.' " *Foxcroft Townhome Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150, 154, 449 N.E.2d 125, 126 (1983), quoting *Bowman v. County of Lake*, 29 Ill. 2d 268, 272, 193 N.E.2d 833, 835 (1963). There are important policy considerations · which support adherence to this universal rule. In particular is "the interest in the efficient and orderly administration of justice." *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 154, 449 N.E.2d at 126. "It is expected that a cause will proceed to trial on the claims as set forth in the final amended complaint." *Foxcroft Townhome Owners Ass'n*, 96 Ill. 2d at 154, 449 N.E.2d at 126.

Nevertheless, in this case, the second amended complaint may be considered on review. In *Stenwall v. Bergstrom*, 398 Ill. 377, 382, 75 N.E.2d 864, 867 (1947), the court stated, "[i]t often becomes necessary, when a record is brought to this court for review, to review the entire record to do justice between the parties in the cause." See Ill. Rev. Stat. 1945, ch. 110, par. 45(4). Furthermore, Supreme Court Rule 366 (134 Ill. 2d R. 366) provides: "(a) Powers. In all appeals the reviewing court may, in its discretion, and on such terms as it deems just *** (5) enter any judgment and make any order that ought to have been given or made ***." This provision recognizes:

"[T]he responsibility of a reviewing court for a just result and for

the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversary character of our system." *Hux v. Raben*, 38 Ill. 2d 223, 225, 230 N.E.2d 831, 832 (1967).

■ We hold that plaintiff's *quantum meruit* count in its second amended complaint was improperly refused under *Illinois Graphics Co.* While count I of plaintiff's second amended complaint did not specify every element necessary to plead a cause of action for *quantum meruit* under *Owen Wagener & Co. v. U.S. Bank*, 297 Ill. App. 3d 1045, 1053, 697 N.E.2d 902, 908 (1998) (*i.e.*, (1) plaintiff performed a service to benefit the defendant; (2) plaintiff performed this service nongratuitously; (3) defendant accepted this service; and (4) no contract existed to prescribe payment of this service), it clearly included facts which, if proven, would entitle the plaintiff to recover under *quantum meruit* theory. See *Illinois Graphics Co.*, 159 Ill. 2d at 483, 639 N.E.2d at 1288-89.

In this case, plaintiff pled that it had a written contingency agreement with the Crocketts, and this agreement was attached to the complaint. Further, plaintiff pled in detail the legal services it performed to benefit the Crocketts' case during its representation, which lasted approximately three months. Specifically, paragraph 8 provided an accounting of the work done by plaintiff in pursuit of the Crocketts' claim, including:

"(a) [o]btaining the appointment of the Crocketts as Co-Guardians of the estate of Addean Crockett;

(b) [o]btaining, examining and analyzing medical records of the treatment of Addean Crockett at Humana Michael Reese Hospital;

(c) [d]etermining from said records that Addean Crockett, who was neurologically intact on and prior to July 29, 1992 when she underwent surgery for a benign brain tumor, thereafter probably required total care for all activities of daily living as the result of medical negligence;

(d) [d]etermining from said records and from investigation the identity of potential defendants who might be responsible for such negligence;

(e) [f]ormulating the medico-legal theories upon which a complaint against the responsible parties could be predicated;

(f) [p]rocured the services of medical experts to evaluate the Crocketts' claim, to execute the affidavit required by section 2—622 of the Code of Civil Procedure (735 ILCS 5/2—622), and to prepare testimony for trial of the cause;

(g) [r]esearched for, drafted, and filed a timely complaint pleading a clause of action for said malpractice on behalf of plaintiffs in the Circuit Court of Cook County, Illinois under Case No. 93 L 7207;

(h) [p]ursued discovery against the defendants in said case No. 93 L 7207; and

(i) [e]ntered into settlement discussions with counsel representing the defendants in said case No. 93 L 7207 who indicated their willingness to settle the cause."

If these facts are proven true, plaintiff may be entitled to recover from the Crocketts under the theory of *quantum meruit.* Therefore, in the exercise of our authority under Rule 366 and *Illinois Graphics,* we allow plaintiff leave to file a fourth amended complaint on the theory of *quantum meruit,* keeping in mind that it must comport with the elements as stated in *Owen Wagener & Co.,* 297 Ill. App. 3d at 1053, 697 N.E.2d at 908.

■ Next we will consider plaintiff's breach of contract claim. We note at the outset that the portion of the brief concerning count II of plaintiff's third amended complaint for breach of contract fails to comply with Illinois Supreme Court Rule 341 (134 Ill. 2d R. 341). This rule contains the requirements that must be met when filing an appellate brief, particularly subsection (e), which mandates what an appellant's brief must contain. 134 Ill. 2d R. 341(e). In this case, plaintiff failed to cite supporting authority as is required under Rule 341. 134 Ill. 2d R. 341.

It is within our discretion to strike the breach of contract argument in plaintiff's brief based on violations of these rules. *Geers v. Brichta,* 248 Ill. App. 3d 398, 400, 618 N.E.2d 531, 533 (1993). Nevertheless, we decline to take such a severe action at this time and choose to discuss the merits of this issue. *People v. Patrick,* 298 Ill. App. 3d 16, 697 N.E.2d 1167 (1998). Some violations of supreme court rules fail to be so outrageous that they would make it difficult for this court to review the case. *Cottrill,* 253 Ill. App. 3d at 938, 625 N.E.2d at 890. Here, there was no Illinois case authority directly on point, so plaintiff's failure to cite authority will not preclude our consideration. Accordingly, we elect to consider the merits of count II.

Plaintiff claims that the fee disclosure form was a contract between defendant Tobin and plaintiff and that this contract was breached when defendant Tobin (1) failed and refused to comply with plaintiff's request for assistance and (2) actively participated in the transfer of Crocketts' representation. Defendants contend there was no contract and therefore no breach.

■ We conclude that the fee disclosure form was not a contract between plaintiff and defendant Tobin. The instrument, to be a valid contract and mutually binding, must contain mutual consideration. *Johnson v. George J. Ball, Inc.,* 248 Ill. App. 3d 859, 865, 617 N.E.2d 1355, 1359 (1993) ("[m]utual consideration *** is an essential element

of a contract"). Generally, any act or promise that is of benefit to one party or disadvantage to the other constitutes sufficient consideration to support a contract. *Johnson*, 248 Ill. App. 3d at 865, 617 N.E.2d at 1359.

The instrument alleged to be a contract was signed by defendant Tobin, plaintiff and the Crocketts. Relevant portions of the instrument state, "from time to time I [plaintiff] will request assistance from your referring attorney" and "[w]e are both responsible to see that your claim is properly handled, and we hope this arrangement will result in a more prompt and favorable resolution of your claim." Thus, within the document, defendant Tobin nowhere agrees or promises to do any act nor binds herself in any way. See *In re Estate of Peterson*, 286 Ill. App. 424, 432, 3 N.E.2d 725, 728 (1936).

Instead, the instrument was the parties' attempt to comply with Rule 1.5 of the Rules of Professional Conduct through a fee disclosure form. 134 Ill. 2d R. 1.5. Rule 1.5 mandates disclosure to the client whenever his attorney enters into an arrangement with another attorney to share fees and responsibility for the legal matters entrusted to the first attorney. 134 Ill. 2d R. 1.5. The purpose of this rule is to preserve the client's right to be represented by the attorney of his choosing. See *Holstein v. Grossman*, 246 Ill. App. 3d 719, 734-35, 616 N.E.2d 1224, 1234 (1993). To that end, the fee disclosure form is not an agreement between plaintiff and defendant Tobin, but merely a statement of what the Crocketts are entitled to be told under the Rules of Professional Conduct. See 134 Ill. 2d R. 1.5.

Furthermore, if we concluded that the fee disclosure form constituted a contract between plaintiff and defendant Tobin, it would be in contravention of the public policy that clients choose their counsel and can discharge their attorney at any time. In Illinois, a client may terminate the services of his attorney at any time with or without cause. *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 227-28, 399 N.E.2d 969, 974 (1979); *Hofreiter v. Leigh*, 124 Ill. App. 3d 1052, 1054, 465 N.E.2d 110, 111 (1984) ("[i]t is elementary doctrine *** that a client has an absolute and unconditional right to discharge his attorney at any time"). To that end, no contract shall exist that will interfere with this right. See *Rhoades*, 78 Ill. 2d at 229, 399 N.E.2d at 975.

If the fee disclosure form was a contract among plaintiff, defendant Tobin, and the Crocketts (all the signatories), then the Crocketts would have to breach the contract in order to exercise their right to discharge their attorney. Instead, a "client's right to discharge his attorney at will is not a breach of contract but a term of the contract implied by law because of the special relationship between attorney

and client and *** it would be anomalous and unjust to hold a client liable in damages for exercising that implied right." *Rhoades*, 78 Ill. 2d at 229-30, 399 N.E.2d at 975. This principle is grounded in the public policy concern that if the plaintiff could recover its full contract fee, a client's right to discharge his attorney would be meaningless since, even though he had discharged his attorney, his financial responsibility to his former attorney would be unchangeable. *Rhoades*, 78 Ill. 2d at 229, 399 N.E.2d at 975. For the foregoing reasons, the fee disclosure form is not a contract.

In addition, while plaintiff alleges defendant Tobin breached a contract by "actively participating in the transfer of the Crocketts' representation," this allegation is not indicative of a contract action but, instead, a claim for tortious interference with prospective economic advantage. *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 654 N.E.2d 675 (1995).

Next, plaintiff claims that count III of the third amended complaint alleging a breach of fiduciary duty against defendant Tobin states a cause of action. Plaintiff contends that the fee disclosure form signed by defendant Tobin explicitly obligated her jointly with plaintiff to see that the Crocketts' claim was properly handled. Plaintiff argues a "joint venture" was created by the disclosure form as a matter of law and that, as "joint venturers," plaintiff and defendant Tobin owed a fiduciary duty to each other. However, defendants contend that there are no allegations, factual or otherwise, to support the existence of a "joint venture."

In support of its argument, plaintiff relies on a recent decision by this court, *Larry Karchmar, Ltd. v. Nevoral*, 302 Ill. App. 3d 951, 956-57 (1999), which states:

> "An agreement between two attorneys to share fees creates a joint venture and therefore a fiduciary duty of honesty and good faith to disclose to each other all matters affecting their joint representation. *Holstein v. Grossman*, 246 Ill. App. 3d 719, 616 N.E.2d 1224 (1993). At a minimum, a fiduciary owes an obligation to deal honestly and fairly with his partner. *Dowd & Dowd, Ltd. v. Gleason*, 284 Ill. App. 3d 915, 672 N.E.2d 854 (1996), *aff'd in part, rev'd in part & remanded*, 181 Ill. 2d 460, 693 N.E.2d 358 (1998)."

■ However, whether a joint venture exists is a matter of intent. *Holstein*, 246 Ill. App. 3d at 737, 616 N.E.2d at 1236. Illinois courts have delineated what factors are determinative of intent. These include:

> "(1) an express or implied agreement to carry on some enterprise; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge by each joint

venturer; (4) some degree of joint proprietorship or mutual right to exercise control over the enterprise; and (5) provision for the joint sharing of profits and losses." *Holstein*, 246 Ill. App. 3d at 738, 616 N.E.2d at 1236, citing *Ambuul v. Swanson*, 162 Ill. App. 3d 1065, 1068, 516 N.E.2d 427, 429 (1987).

Other state courts have recognized that "sharing fees earned on certain matters of joint representation, *standing alone*, is not sufficient to prove a joint venture." (Emphasis in original.) *Fitzgibbon v. Carey*, 70 Or. App. 127, 130-31, 688 P.2d 1367, 1370 (1984), *appeal denied*, 298 Or. 553, 695 P.2d 49 (1985); see *Willis v. Crawford*, 38 Or. 522, 63 P. 985 (1901). Without more, "the mere fact that attorneys associate on a fee for services basis does not make them joint venturers." *Fitzgibbon v. Carey*, 70 Or. App. 127, 130-31, 688 P.2d 1367, 1370 (1984).

■ According to the fee disclosure form that was signed by defendant Tobin, although plaintiff was to be "primarily responsible for the preparation and resolution of the Crocketts' claim, plaintiff would from time to time require assistance from [defendant] Tobin." The form further provided that plaintiff and defendant Tobin "are both responsible to see that [the Crocketts'] claim is properly handled." Furthermore, the disclosure form indicated that defendant Tobin was to receive a portion of plaintiff's fee.

Nevertheless, this referral arrangement failed to create a joint venture. The record indicates that the relationship between the two attorneys resembled the fee arrangement contemplated in Rule 1.5 where the primary service performed by the referring lawyer is the referral of the client to the other lawyer. Plaintiff was to do a disproportionate amount of work. Plaintiff and defendant Tobin were not acting as co-counsel for the Crocketts; plaintiff had a disproportionate amount of control over the handling of the case. The parties engaged in no shared decision-making or shared work for the benefit of the Crocketts. They did not even share the costs—only the profit. Therefore, there was no joint venture here and, thus, no fiduciary duty owed.

In *Holstein*, 246 Ill. App. 3d 719, 616 N.E.2d 1224, by contrast, an attorney and a law firm entered into an agreement whereby the attorney would refer all personal injury claimants to the firm in exchange for a 50/50 sharing of fees. At the time of the suit, the attorney had referred 10 cases to the law firm. The court found a fiduciary duty existed between the parties since they were engaged in an ongoing relationship which constituted an "enterprise." In this case, defendant Tobin referred one case to plaintiff and no enterprise existed between them. Thus, plaintiff failed to state a cause of action for breach of fiduciary duty.

■ Next, plaintiff contends the trial court erred in dismissing its claims for tortious interference with a contractual relationship against defendants Tobin and Munday & Nathan (counts IV and V, respectively). Defendants argue that an attorney in an at-will employment relationship does not have an enforceable contractual right to employment and, therefore, cannot maintain an action for tortious interference with contractual relations. We agree. An action for tortious interference with contractual relations is not the proper vehicle for a discharged attorney seeking to recover damages. See *Fellhauer v. City of Geneva*, 142 Ill. 2d 495, 510, 568 N.E.2d 870, 877 (1991); *Anderson*, 274 Ill. App. 3d at 1013, 654 N.E.2d at 685. Therefore, plaintiff's claims for tortious interference with contractual relations were properly dismissed.

■ Instead, "[a]n action for tortious interference with a contract terminable at will is classified as one for intentional interference with prospective economic advantage." *Larry Karchmar, Ltd.*, 302 Ill. App. 3d at 958; see *Fellhauer*, 142 Ill. 2d at 510, 568 N.E.2d at 877. In counts VI and VII of plaintiff's third amended complaint, plaintiff properly alleged tortious interference with a prospective economic advantage against, first, defendant Tobin and, second, defendant Munday & Nathan.

It is generally recognized by the Illinois courts that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. *Fellhauer*, 142 Ill. 2d at 511, 568 N.E.2d at 877; *Anderson*, 274 Ill. App. 3d at 1013, 654 N.E.2d at 685.

First, plaintiff alleges that it had an attorney-client relationship with the Crocketts that "was advantageous to plaintiff." Second and third, plaintiff pled:

> "Plaintiff is informed and believes that defendant Tobin, for her own benefit and the benefit of her brother James B. Tobin, interfered with said advantageous relationship between plaintiff and the Crocketts *by having knowledge of* and failing to prevent the said discharge of the plaintiff and/or *actively participating in the discharge of plaintiff* and in transferring the representation of the Crocketts from plaintiff to Munday & Nathan, a firm wherein her brother is an associate attorney." (Emphasis added.)

Fourth, plaintiff pled that defendant Tobin's foregoing conduct was deliberately intended to benefit her and her brother's law firm,

"depriving plaintiff of the fee it would have earned in the absence of the breach."

In regard to defendant Munday & Nathan, plaintiff again alleged, first, that its representation of the Crocketts constituted an attorney-client relationship that was advantageous to plaintiff. Second and third, plaintiff pled:

"Plaintiff is informed and believes that defendant Munday & Nathan, for its own benefit, interfered with said advantageous relationship between plaintiff and the Crocketts by *actively participating with and assisting defendant Tobin* in the discharge of plaintiff and in transferring the representation of the Crocketts from plaintiff to Munday & Nathan, *notwithstanding the knowledge of said defendant of the existence of the said advantageous relationship*, the wrongful nature of defendant Tobin's conduct in terminating it, and the damages which it would cause plaintiff." (Emphasis added.)

Fourth, plaintiff pled that defendant Munday & Nathan's conduct was "deliberately intended to benefit itself and thus to deprive plaintiff of the fee it would have earned in the absence of such interference."

Similarly, in *Anderson*, 274 Ill. App. 3d at 1001, 654 N.E.2d at 675, the court found plaintiff lawyer stated a cause of action against defendant lawyers for tortious interference with prospective economic advantage. Plaintiff alleged that she had an attorney-client relationship with the clients from which she expected to earn substantial legal fees, that defendants were aware of that relationship, that defendants induced the clients to discharge her as their attorney, and that the clients in fact discharged her at defendants' urging. See *Anderson*, 274 Ill. App. 3d at 1001, 654 N.E.2d at 685.

■ Taking all of the allegations of fact contained in counts VI and VII of plaintiff's third amended complaint as true and drawing all reasonable inferences from those facts that are favorable to plaintiff (*Your Style Publications, Inc.*, 150 Ill. App. 3d at 424, 501 N.E.2d at 807), we believe plaintiff has stated a cause of action against defendant for tortious interference with prospective economic advantage. The truth of plaintiff's allegations or its ability to prove those allegations is not a matter that we are called upon to address in the context of our review of the dismissal predicated upon the motion filed by defendants in this case. See *Anderson*, 274 Ill. App. 3d at 1013, 654 N.E.2d at 685.

Plaintiff further contends that count VIII in its third amended complaint properly pled each element required to maintain an action in conspiracy between defendants Tobin and Munday & Nathan. In response, defendants assert that count VIII was properly dismissed for failure to state a cause of action for conspiracy.

■ The plaintiff's allegations fail to state a cause of action for conspiracy against defendants Tobin and Munday & Nathan. In order to state a claim for civil conspiracy, a plaintiff must plead a combination of two or more persons who join together for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62, 645 N.E.2d 888 (1994). Specifically, the necessary elements of a civil conspiracy include: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties; and (4) the overt act was done pursuant to and in furtherance of the common scheme. *Dowd & Dowd, Ltd*, 284 Ill. App. 3d at 928, 672 N.E.2d at 863. The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss. *Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 24, 694 N.E.2d 565, 571 (1998).

Indeed, in count VIII, plaintiff alleged defendants conspired for the purpose of terminating the agreement between plaintiff and the Crocketts, tortiously interfering with the retainer agreement, tortiously interfering with the attorney-client relationship between plaintiff and the Crocketts, and transferring benefits from the retainer agreement and that relationship from plaintiff to defendant Munday & Nathan, defendant Tobin, and James Tobin. Since plaintiff failed to plead the elements of a claim for civil conspiracy or any facts to support the claim, count VIII was properly dismissed.

■ Next, plaintiff pleads punitive damages in counts VI and VII based on its tortious interference claim. However, punitive or exemplary damages are not favored in the law. *Beaton & Associates, Ltd. v. Joslyn Manufacturing & Supply Co.*, 159 Ill. App. 3d 834, 845-46, 512 N.E.2d 1286, 1293 (1987). Courts allow punitive damages only when aggravated circumstances, including fraud, willfulness, wantonness, or malice, accompany a wrongful act. *Beaton & Associates, Ltd.*, 159 Ill. App. 3d at 846, 512 N.E.2d at 1293. Courts award punitive damages to punish a defendant, teaching him not to repeat his intentional, deliberate and outrageous conduct, and to deter others from similar conduct. *Beaton & Associates, Ltd.*, 159 Ill. App. 3d at 846, 512 N.E.2d at 1293. Punitive damages should not be awarded if the defendant's misconduct is not above and beyond the conduct needed for the basis of the underlying cause of action. *Parsons v. Winter*, 142 Ill. App. 3d 354, 361, 491 N.E.2d 1236, 1241 (1986). Moreover, the decision to award punitive damages is left to the trier of fact; a reviewing court will not disturb its decision absent an abuse of discretion. *Beaton & Associates, Ltd.*, 159 Ill. App. 3d at 846, 512 N.E.2d at 1293.

In this case, plaintiff undeniably started and completed some work on the Crocketts' case. However, only three months passed from the time it was retained until the time it was released. Defendants' conduct was not "wanton" or "outrageous" enough for this court to justify an award of punitive damages since plaintiff had invested relatively minimal time and resources on the Crockett case before defendants informed it of its discharge.

Furthermore, there were no allegations in the tortious interference count of the third amended complaint that would suggest an evil motive. The paragraph in counts VI and VII pleading punitive damages included:

> "(2) [D]efendant's conduct was deliberately intended to benefit itself and thus to deprive plaintiff of the fee it would have earned in the absence of such interference, and therefore, constitutes malice in law."

Absent any further facts and allegations, plaintiff has not sufficiently pled a cause of action upon which punitive damages can be awarded. See *Wait v. First Midwest Bank/Danville*, 142 Ill. App. 3d 703, 710, 491 N.E.2d 795, 802 (1986) ("[t]he mere addition of the phrase 'willful and wanton' *** is insufficient to allege reckless misconduct necessary to support an allowance of punitive damages"). After reviewing the record and pleadings therein, we conclude that punitive damages are inappropriate in the instant case.

Next, in one of the motions taken with this case, defendants seek to strike plaintiff's argument in reference to defendants' section 2—619 motion to dismiss because plaintiff improperly asks this court to consider and deny the motion. We grant defendants' motion to strike a limited section of plaintiff's brief.

The jurisdiction of the appellate court extends only to those matters in controversy that the trial court has ruled on. *Goodrich v. Sprague*, 376 Ill. 80, 86, 32 N.E.2d 897, 900 (1941). If the lower court's failure to rule is the subject of alleged error, the propriety of the failure to rule itself is the question presented to the appellate court, and not the merits of the matter upon which the trial court refused to act. *Goodrich*, 376 Ill. at 86, 32 N.E.2d at 900. To that end, we do not have jurisdiction over the merits of defendants' section 2—619 motion and will only rule on the propriety of the failure to rule by the trial court.

> "The jurisdiction to pass upon said motion resting solely in the trial court and it having refused to exercise its jurisdiction in respect thereto, this court is without jurisdiction now, just as it was on the prior appeal, to determine upon their merits the questions

raised by defendants' motion for a new trial." *Jacobsen v. Friel*, 332 Ill. App. 97, 103, 74 N.E.2d 147, 149 (1941).

Therefore, we grant defendants' motion to strike section II of plaintiff's brief, limited to pages 29 through 31.

■ Now we consider whether it was proper for the trial court to refuse to rule on defendants' section 2—619 motion to dismiss. Our supreme court has stated that "[t]he courts of Illinois do not issue advisory opinions to guide future litigation." *George W. Kennedy Construction Co. v. City of Chicago*, 112 Ill. 2d 70, 76, 491 N.E.2d 1160, 1162 (1986). In fact, a ruling on defendants' section 2—619 motion to dismiss would have served no purpose because the third amended complaint had already been dismissed with prejudice pursuant to section 2—615. Plaintiff has failed to show that the trial court abused its discretion in declining to rule on the section 2—619 motion to dismiss.

Finally, defendants bring a cross-appeal arguing the trial court erred in its refusal to sanction plaintiff under Rule 137 (155 Ill. 2d R. 137). In a motion to expunge defendants' cross-appeal that was taken with the case, however, plaintiff argues that this court lacks jurisdiction to hear defendants' cross-appeal because defendants filed the cross-appeal in this court instead of the circuit court. The question of jurisdiction of the appellate court must be determined prior to deciding the merits of an appeal. *Chicago Title & Trust Co. v. Brooklyn Bagel Boys, Inc.*, 222 Ill. App. 3d 413, 421, 584 N.E.2d 142, 147 (1991).

■ We do not have jurisdiction under Supreme Court Rule 303(a) (155 Ill. 2d R. 303(a)) to hear defendants' cross-appeal. Defendants failed to timely file the cross-appeal in the circuit court as required under Rule 303(a). Furthermore, the record contains no notice of cross-appeal as required by Rule 303, which may result in dismissal. *Chicago Title & Trust Co.*, 222 Ill. App. 3d at 421, 584 N.E.2d at 147. A "Notice of Cross-Appeal" is appended to defendants' brief along with a notice of filing filed in the appellate court. However, the "Notice of Cross-Appeal" bears no markings indicating it was filed in the circuit court. An attachment to a brief is no substitute for compliance with supreme court rules. *Regal Package Liquor, Inc. v. J.R.D., Inc.*, 125 Ill. App. 3d 689, 691, 466 N.E.2d 409, 411 (1984). Hence, we grant plaintiff's motion to dismiss the cross-appeal for lack of jurisdiction.

For the foregoing reasons, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.