YOUR STYLE PUBLICATIONS, INC., *et al.*, Plaintiffs-Appellants, v. MID TOWN BANK AND TRUST COMPANY OF CHICAGO *et al.*, Defendants-Appellees.

First District (2nd Division) No. 85—0866

Opinion filed November 25, 1986.

Robert H. Dachis, of Keefe & Ehemann-Law Center Ltd., of Chicago (Michael L. Closen, of counsel), for appellants.

Kenneth R. Gaines, Robert I. Berger, and Jeffrey T. Kraus, all of Altheimer & Gray, of Chicago, for appellee Mid Town Bank & Trust Company of Chicago.

Randall L. Mitchell, of Adams, Fox, Adelstein & Rosen, of Chicago, for appellee Aetna Bank.

David A. Kallick, of Hurley & Kallick, Ltd., of Northbrook, for appellee Lake View Trust & Savings Bank.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Plaintiffs Your Style Publications, Inc., Bruce Hall, and David C. Killen (hereinafter customers), issued their respective checks to plaintiffs William Kelly, Sheldon Mathis, and Willie G. Curry, (hereinafter payees) drawn on their respective banks, defendants Mid Town Bank and Trust Company of Chicago (hereinafter Mid Town), Lake View

Trust & Savings Bank, and Aetna Bank. The payees presented the checks for payment to the banks on which they were drawn. The banks refused to cash the checks without payment of a noncustomer "service fee"[1] by payees, Kelly, Mathis, and Curry, notwithstanding the fact that the checks were drawn on that bank. The banks considered the payees noncustomers because they did not have an account at that particular bank.

The plaintiffs filed suit against the banks and alleged: (1) wrongful dishonor of the checks presented; (2) breach of contract; (3) misrepresentation of the terms of the checking account agreement; and (4) breach of contract as to third-party beneficiaries. The trial court dismissed all of the counts for failure to state a cause of action. Plaintiffs appeal.

■ This court has repeatedly held that a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790.) Once the court identifies the well-pleaded facts which are to be considered, it must then draw all reasonable inferences therefrom favorable to the pleader. (*Bishop v. Ellsworth* (1968), 91 Ill. App. 2d 386, 391, 234 N.E.2d 49.) No pleading is bad in substance which reasonably informs the opposite party of the nature of the claim which it is called upon to meet. *Browning v. Heritage Insurance Co.* (1975), 33 Ill. App. 3d 943, 947, 338 N.E.2d 912.

The issue is, therefore, when viewing the facts most favorably to the plaintiffs, whether they sufficiently allege all necessary elements of the cause of action. In order to communicate a better understanding of an otherwise technical area, we will track the Your Style-Kelly-Mid Town transaction. The others are substantially the same. The principles of law will apply equally to each of the transactions.

I

Plaintiff William Kelly was employed by plaintiff Your Style Publications. Your Style issued its payroll check drawn on defendant Mid Town Bank and Trust Company where Your Style maintained a checking account. The check unequivocally directed the bank to pay Kelly a sum certain. When Kelly accepted the check for his wages from Your Style, nothing appeared on the face of the check that would cause

---

[1]Although the amount of the service fee is not directly at issue in this case, it is well to note that the 2% fee imposed by one of the banks to cash a check is almost equal to the 2½% generally withheld on a payroll check for State income tax.

Kelly to believe that he would receive less than the sum certain designated on the face of the check. Neither Your Style nor Kelly had any reason to believe that Mid Town would pay Kelly less than the sum certain. However, Mid Town paid Kelly less than the sum certain by charging a "service fee." Mid Town deducted the fee because Kelly did not have an account at Mid Town and the bank considered him a "noncustomer." Your Style and Kelly allege that Mid Town "dishonored" the check, violating its duty to them for which they now seek relief.

## A

■ A check is dishonored when "presentment is duly made and *** payment is refused." (Ill. Rev. Stat. 1983, ch. 26, par. 3—507.) Mid Town contends that it did not "dishonor" the check because it made payment in full of the face amount of the check. Then, in a separate transaction, Mid Town imposed and received a "service fee" from Kelly. Placing such a strained interpretation on the transaction does violence to the liberal standard by which pleadings are to be construed. Viewing the pleadings in the light most favorable to the plaintiffs, we can reasonably conclude that Mid Town first deducted the "service fee" then paid the balance of the face amount of the check to Kelly. Thus, the allegation of "dishonor" is sufficiently pleaded to survive a motion to dismiss.

## B

■ The bank also asserts that it has the right to refuse Kelly immediate payment upon presentation of his check over the counter. In support of this right, Mid Town relies on Uniform Commercial Code section 3—506(2), which states "payment of an instrument may be deferred without dishonor pending reasonable examination to determine whether it is properly payable, but payment must be made in any event before the close of business on the day of presentment." Ill. Rev. Stat. 1983, ch. 26, par. 3—506(2).

A review of the pleadings filed by the plaintiffs reveals that Your Style did have sufficient funds to cover Kelly's payroll check. The pleadings further allege that it was indeed Kelly that presented the check to Mid Town for payment. Therefore, viewing the pleadings in the light most favorable to the plaintiffs, we can conclude that Mid Town had sufficient funds on deposit to cover Kelly's check. We can also conclude that there is no question as to the identity of the person presenting the check for payment.

When Kelly appeared at Mid Town with his payroll check received

from Your Style, Mid Town had the option of paying the full face amount to Kelly or to refuse payment of the full face amount and risk a charge of "dishonor." Having made its choice, Mid Town should respond. Dismissal of plaintiffs' complaint is not warranted.

## C

■ Mid Town justifies the "service fee" to "offset the risk" it incurred when it made direct payment to Kelly. However, there is no risk apparent from the record. The pleadings allege that Your Style did have sufficient funds in its account to cover the check issued to Kelly. The pleadings also allege that Kelly, as payee, was indeed the person presenting the check for payment. Therefore, again, we can conclude that Mid Town had sufficient funds on deposit to cover Kelly's check. We can also conclude that there was no question as to the identity of the person presenting the check for payment. In light of these well-pleaded facts, the service fee cannot be justified to offset a nonexistent risk.

## D

■ When Your Style opened its checking account, it entered into a creditor-debtor relationship with Mid Town. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63.) The bank became the debtor of Your Style to the extent of the funds on deposit. (*Cicero State Bank v. Crowley* (7th Cir. 1940), 115 F.2d 1022.) The bank is required to follow the customer's orders. As long as the bank acts in accordance with the customer's orders, it will not be held liable. *Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 288, 345 N.E.2d 503.

In this case, Your Style ordered Mid Town to pay Kelly the sum that appeared on the face of the check. Mid Town, however, paid Kelly a sum less than the amount that appeared on the face of the check. Mid Town's failure to pay out the funds according to Your Style's order constitutes a breach of the creditor-debtor relationship. In breaching this relationship, Mid Town's conduct constituted a "dishonor" of the presented check. Ill. Rev. Stat. 1983, ch. 26, par. 3—507.

## E

■ The underlying purpose of the Uniform Commercial Code is to "simplify, clarify and modernize the law governing commercial transactions." (Ill. Rev. Stat. 1983, ch. 26, par. 1—102(2).) Based on this declaration of policy, Your Style can expect its own bank to make

full payment of payroll checks it issues to its employees. In addition, Kelly and other employees of Your Style can expect to receive full payment of the amount of wages shown on the check when the check is presented for payment at the employer's bank.

Failure to follow the purposes of the Uniform Commercial Code could result in a return to the cash-pay envelope. Such a reversion would cause an additional burden on the free flow of commerce. Encouraging such a result would not "simplify, clarify and modernize" commercial transactions. Therefore, the service fee imposed is not only onerous and unfair, but it is also contrary to the purpose of the Uniform Commercial Code and, therefore, illegal.

### F

The foregoing illustration dealing with Your Style, Kelly and Mid Town is substantially the same as the transactions involving other plaintiffs and defendants. Each of the transactions involved a bank customer, a payee to whom the bank customer issued a check, and a bank that imposed the service fee. In each instance, the payee personally presented the check for payment at the bank. In each instance there were sufficient funds on deposit. Although the amount of the service fee imposed by each bank varied, this is not a significant issue. The material issue is the fact that the banks imposed any service fee.

The principles of law that apply to the Your Style-Kelly-Mid Town transaction apply equally to the other two transactions involved in this case. Therefore, plaintiffs' complaint is sufficient to overcome a motion to dismiss.

### II

Plaintiffs Your Style, Hall, and Killen contend that their respective banks Mid Town, Lake View, and Aetna had no contractual right to impose a "service fee" on their payees. The banks respond that their contracts specifically authorize the imposition of such a fee.

### A

■■ ■ The rules governing the relationship between a bank and its depositor are determined by the contract. (*Menicocci v. Archer National Bank* (1978), 67 Ill. App. 3d 388, 391, 385 N.E.2d 63.) The contract in each instance consisted of a signature card which provides that the customer is subject to all the rules and regulations of the bank. The rules and regulations of the banks include a fee schedule for various bank services. Lake View's fee schedule, the only fee

schedule before this court, includes fees for a regular checking account. In this category, the contractual relationship between the bank and the checking-account customer clearly indicates that if the balance is less than the minimum or average balance requirement, a charge of $3 per month and $0.25 per check will be imposed. This fee is to be paid by the bank's customer, the maker of the checks.

In a separate, unrelated section of the fee schedule, under the designation "Teller Services," there is a provision for a fee to be charged for noncustomer check cashing. Lake View's fee schedule charges 2% of the face value of the check. This fee is preceded by fees for New York bank drafts and followed by fees for personal money orders. This unrelated "Teller Services" section does not follow the section dealing with regular checking accounts.

A contract drawn by a bank must be construed most strongly against the bank. (*Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank* (1983), 117 Ill. App. 3d 284, 452 N.E.2d 1361.) The signature card and fee schedule which purport to constitute the contract between the bank and its customers are incorporated in, and made a part of, the plaintiffs' complaint. Construing the contract most strongly against the bank, we can conclude that the noncustomer check-cashing fee does not apply to regular checking accounts. Therefore, at this stage of the proceedings, we can conclude that the contract does not authorize imposition of a "service fee" on Kelly, Mathis, or Curry, who presented checks drawn on the respective banks by checking-account customers.

B

■ The bank's reliance on the "noncustomer check cashing" provision of the alleged contract is misplaced. The term "noncustomer check cashing" is ambiguous. Before it can be said there is no ambiguity as to a meaning of a word in a contract, the court must conclude that the word is capable of only one interpretation, and that conclusion must be reached from consideration of the entire contract. *Wilkin v. Citizens National Bank* (1938), 298 Ill. App. 38, 45, 18 N.E.2d 251.

Construing the contract most strongly against the bank, the term "noncustomer" may indicate someone who has a check not drawn on the bank and does not have an account at that bank. This individual would be the "noncustomer" subject to the 2% service fee. Plaintiffs Your Style, Hall, and Killen, as customers of the banks upon which the checks were drawn, have no reason to believe that their own checks would be subjected to this fee. Under this interpretation,

defendant banks have exceeded their authority under the contracts.

## C

Based on the foregoing, Your Style, Hall, and Killen have pleaded sufficient facts to survive a motion to dismiss. The plaintiffs have a contractual relationship with the respective defendant banks evidenced by the signature card and the fee schedule. A reasonable construction of the contracts of deposit for regular checking-account customers does not include the service fee for the type of transactions involved in this case. Therefore, Your Style, Hall, and Killen have sufficiently pleaded a cause of action for breach of the contracts of deposit.

## III

■■ ■ Your Style, Hall, and Killen further contend that they have sufficiently pleaded facts to allege a cause of action for misrepresentation against Mid Town, Lake View, and Aetna. They contend the banks did not apprise them of the fact that the "noncustomer" check-cashing fee would be imposed on their own checks. Your Style, Hall, and Killen knew themselves to be customers of their respective banks and expected the bank to pay out to their order.

In an action for misrepresentation, the plaintiff must show that defendant knowingly made a false statement of material fact inducing plaintiff's reliance and that the plaintiff justifiably relied on the statement to his detriment. *Baldi v. Chicago Title & Trust Co.* (1983), 113 Ill. App. 3d 29, 32, 446 N.E.2d 1205.

In the instant case, the only time a service fee could be imposed for a regular checking account is when the customer's balance fell below the required minimum. It is not alleged that Your Style, Hall, or Killen did not have the minimum required balance on deposit. Liberal construction of the pleadings requires us to conclude that the customers had sufficient funds in their accounts to avoid the imposition of a fee.

Therefore, there is no basis for a service fee on the bank customer. However, service fees were imposed when the checks were presented for payment over the counter. Such actions by the banks may render the statement that a service fee will be imposed only when the balance falls below a required minimum to be false.

The following ultimate facts can be drawn from a liberal construction of the pleadings. When the checks were presented for payment by the payees, a fee was imposed. The payees now seek to recover the fees imposed by the banks from the makers. This causes the

maker, as the checking-account customer of the bank, to be the party upon whom the fee is actually imposed. The banks did not inform their customers that their payees would be subjected to such a fee. To that extent, there is a sufficient allegation of misrepresentation. The complaint alleges that plaintiffs relied upon this misrepresentation of a material fact and suffered damages.

Therefore, viewing the facts in the light most favorable to the plaintiffs, the misrepresentation count was erroneously dismissed.

## IV

Lastly, Kelly, Mathis, and Curry, the payees on the checks, contend that they have a cause of action against the defendant banks for breach of contract as third-party beneficiaries. They assert that they were injured when the defendant banks breached the deposit agreements.

The Uniform Commercial Code provides that "[n]othing in this section shall affect any liability in contract, tort or otherwise arising from any letter of credit or other obligation or representation which is not an acceptance." (Ill. Rev. Stat. 1983, ch. 26, par. 3—409(2).) Comment 3 makes it clear that when a drawee bank fails to accept a check for payment, it may be liable to the holder for breach of the terms of a letter of credit or any other agreement by which the bank is obligated to accept. "He may be liable in tort or upon any other basis because of his representation that he *** intends to accept." Ill. Ann. Stat., ch. 26, par. 3—409, Uniform Commercial Code Comment, at 270 (Smith-Hurd 1983).

Kelly, Mathis, and Curry are not claiming a contract between themselves and the bank. This action arises apart from the dishonored instruments on the banks' representation that it will pay out funds according to their customers' order on the face of the check drawn on their bank. (*Bray v. Illinois National Bank* (1976), 37 Ill. App. 3d 286, 288, 345 N.E.2d 503.) The banks did not follow their customers' orders and, therefore, have damaged Kelly, Mathis, and Curry. Since Kelly, Mathis, and Curry are beneficiaries of the customers' orders, they are third-party beneficiaries.

As a rule, payees do not have a cause of action as third-party beneficiaries against drawee banks every time a check is dishonored. In this instance, the complaint alleged that there were sufficient funds for payment of the checks presented. It was also alleged that Kelly, Mathis, and Curry, the payees, were indeed the persons who presented the checks for payment over the counter. The banks, therefore, were obligated to accept and pay the checks. Their failure to do so

leaves the banks liable to the holders.

Based on the forgoing, plaintiffs have alleged sufficient facts to state a cause of action on all four counts. This matter is, therefore, reversed, and the cause is remanded for further proceedings consistent with the views expressed herein.

Reversed and remanded.

STAMOS and SCARIANO, JJ., concur.