DONNA J. MALKOWSKI, Plaintiff-Appellant, v. JOHN J. MALKOWSKI, Defendant (John L. Malkowski, Defendant-Appellee).

First District (4th Division)   No. 1—93—0157

Opinion filed September 30, 1993.

Dean P. Vanek, of Chicago, for appellant.

Law Offices of Cooper & Storm, of Geneva (Peter M. Storm and Douglas R. Cuscaden, of counsel), and Jeffrey D. Hupert, of Chicago, for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

The plaintiff, Donna Malkowski, filed suit in the circuit court of Cook County against her brother, John J. Malkowski, and her father, John L. Malkowski, seeking to recover damages for physical and psychological injuries she allegedly sustained as a child when her brother sexually abused her. Counts IV and V of the plaintiff's first-amended complaint were directed against her father and alleged he was liable because he failed to protect her from her brother's abuse and failed to assist her in recovering from the trauma that she suffered as a consequence.

The trial court dismissed counts IV and V of the first-amended complaint on the basis of the parent-child tort immunity doctrine and found that there was no just reason for delaying the enforcement or appeal of its order (134 Ill. 2d R. 304(a)). The plaintiff has appealed, and, for the reasons which follow, we affirm. Both of the plaintiff's dismissed counts rest upon the same factual allegations. She alleges that when she was 14 and 15 years old and residing with her mother and father, her brother sexually abused her repeatedly. The abuse took place in her brother's apartment and in his car. According to the complaint, the plaintiff's brother threatened her with physical violence if she did not accede to his sexual demands and if she told anyone about it. In count IV, she seeks recovery against her father for "Breach of Familial Duty," and in count V, she seeks recovery against him for negligent infliction of emotional distress.

In both counts, the plaintiff alleges that her father knew or should have known that her brother abused her. In support of this allegation, the plaintiff pleads:

"A. On several occasions Plaintiff expressed concern regarding her unsupervised visits to her brother's apartment, particularly after her first visit;

B. Plaintiff underwent a noticeable behavioral transition after the visits to her brother's apartment in that she became extremely depressed, irritable, irrational and suicidal;

C. Plaintiff suffered several nervous breakdowns which resulted in psychological care;

D. Plaintiff's educational demeanor and performance dramatically changed from a highly functional student to a completely dysfunctional one in a very short span of time;

E. Plaintiff became increasingly incapable of dealing with everyday realities of life;

F. Plaintiff's mother, recognizing that there was something seriously wrong with Plaintiff, repeatedly attempted to enlist Defendant's assistance in helping Plaintiff, each time such requests for help were ignored by Defendant;

G. On at least one occasion, Plaintiff attempted suicide and her therapist telephoned Plaintiff's parents to ask that they immediately proceed to Plaintiff's apartment to help her. At that time, Defendant stated 'I wish she would kill herself and get it over with, I'm tired of running up and back'; [and]

H. When Defendant was asked on several occasions to partake in family counseling with Plaintiff in an attempt to deter-

mine the cause of Plaintiff's psychological problems; Defendant refused."

Neither of the counts pleads that the plaintiff's father was told or had specific knowledge that she was sexually abused by her brother. In fact, in both counts the plaintiff states the conclusion that her father "knew or should have known that something was seriously wrong with the plaintiff." In count IV, the plaintiff characterizes her father's behavior as "careless and/or reckless" and in count V, his behavior is termed "careless or negligent."

When this case was heard below and the parties briefed the issues on appeal, a legitimate dispute existed as to the continued viability of the parent-child tort immunity doctrine and the extent of its applicability. However, after the issues had been briefed by the parties but before they were argued orally before this court, our supreme court issued its opinion in *Cates v. Cates* (1993), 156 Ill. 2d 76. Both parties were afforded an opportunity to address the holding in *Cates* during their respective oral arguments.

We believe that the supreme court's decision in *Cates* is dispositive of the issues presented in this appeal. Simply put, our supreme court has reaffirmed the viability of the parent-child tort immunity doctrine but limited its applicability to instances related to the parent-child relationship. (*Cates*, 156 Ill. 2d at 103.) As presently recognized in Illinois, the doctrine immunizes a parent from negligence actions brought by a child for "conduct inherent to the parent-child relationship; such conduct constitutes an exercise of parental authority and supervision over the child or an exercise of discretion in the provision of care to the child." (*Cates*, 156 Ill. 2d at 104-05.) In urging reversal, the plaintiff argues that: (1) the parent-child tort immunity doctrine should be abolished, or at least modified, to allow actions such as the plaintiff's; and (2) the doctrine should not be applied to this case because in the absence of a familial relationship between the plaintiff and her father, the doctrine would not serve the purposes for which it is intended.

Because the supreme court made its position clear in *Cates*, we must decline the plaintiff's invitation to abolish or modify the parent-child tort immunity doctrine. (See *Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 551, 457 N.E.2d 1, 3.) The plaintiff's argument that her action should be allowed to proceed because there is no familial relationship between her and her father must also fail. Our supreme court in *Cates* wholly discounted the traditional policy of family harmony as a justification for the continued viability of the parent-child tort immunity doctrine. (*Cates*, 156 Ill. 2d at 98-100.) As

stated by the court in *Cates*: "Courts should not be involved in deciding matters between parent and child which concern decisions which those persons are uniquely equipped to make because of that relationship; to allow otherwise would unnecessarily and obtrusively inject courts into family matters which they are ill-equipped to decide." (*Cates*, 156 Ill. 2d at 103.) In determining the applicability of the doctrine to any given set of facts, the appropriate inquiry is "whether the alleged conduct concerns parental discretion in discipline, supervision and care of the child." *Cates*, 156 Ill. 2d at 104.

While we do not intend to minimize the plaintiff's allegations in counts IV and V, without the unsupported conclusion that her father should have known she was being abused by her brother and drawing all reasonable inferences in her favor from the facts actually pled (see *Your Style Publications, Inc. v. Mid Town Bank & Trust Co.* (1986), 150 Ill. App. 3d 421, 501 N.E.2d 805; *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 448 N.E.2d 591), at most, the counts plead negligent acts committed in the exercise of parental discretion in the care and supervision of the plaintiff. As such, we agree with the trial court that the plaintiff's right to recover against her father is barred by the parent-child tort immunity doctrine.

Affirmed.

CAHILL, P.J., and JOHNSON, J., concur.