FIRST DIVISION

 May 5, 2003

No. 1-01-3996

BUILDERS BANK,                      

Plaintiff-Appellant, 

v. 

BARRY FINKEL AND ASSOCIATES, 

Defendant-Appellee.

) Appeal from the 

) Circuit Court

) of Cook County.

)

) No. 00 L 6961

)

) Honorable

) Sheldon Gardner

) Judge Presiding.

JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, Builders Bank, brought this action against defendant Barry Finkel & Associates, P.C., to recover losses allegedly sustained from plaintiff's professional malpractice and negligent misrepresentation.  Plaintiff alleges that it relied upon reviewed financial statements that defendant prepared for Urkov Manufacturing Company (UMC) for purposes of lending UMC $1.5 million.  Defendant filed a motion to dismiss pursuant to section 2-619 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619 West (2000)).  The trial court granted defendant's motion to dismiss plaintiff's amended complaint.  Plaintiff appeals claiming that the trial court erred by misinterpreting section 30.1 of the Illinois Public Accounting Act (the Act) (225 ILCS 450/30.1 (West 2000)). 

 BACKGROUND

The following facts are derived from the well-pleaded facts in plaintiff's amended complaint and the reasonable inferences drawn therefrom, which for purposes of this appeal must be accepted as true (
In re Chicago Flood Litigation
, 176 Ill. 2d 179, 184, 680 N.E.2d 268 (1997)), as well as the various evidentiary materials submitted by both parties in connection with defendant's motion to dismiss.
(footnote: 1)  See 
Lawson v. City of Chicago
, 278 Ill. App. 3d 628, 634, 662 N.E.2d 1377 (1996) (in ruling on a section 2-619 motion for dismissal, the court may properly consider "external submissions of the parties"); 
In re Petition for Submittal of the Question of Annexation to the Corporate Authorities of the City of Joliet
, 282 Ill. App. 3d 684, 688, 668 N.E.2d 1073 (1996) (court may consider when ruling on section 2-619 motion to dismiss "pleadings, depositions, affidavits [citations], and other evidence offered by the parties").

In November 1998, UMC, a private corporation then engaged in the distribution of upholstery, designer fabrics and custom draperies, applied for a business loan from plaintiff.  In connection with the loan and at plaintiff's request, defendant, UMC's long-time accounting firm, furnished plaintiff with reviewed financial statements, dated July 7, 1998, concerning UMC's operations for the years ending June 30, 1998, and June 30, 1997.  Defendant further supplied projected consolidated financial statements, dated October 15, 1998, for the year ending September 30, 1999.

Plaintiff alleges that when defendant prepared the projected statements for UMC in October 1998, it did so knowing that UMC intended to use the statements primarily to influence UMC's lenders.  A loan preparation document prepared by plaintiff's staff during consideration of UMC's application utilized the reviewed statements prepared by defendant.  Moreover, plaintiff's presenting officer used the projected statements prepared by defendant as evidence of UMC's future profitability.  The reviewed statements listed, 
inter
 
alia
, a value for inventory in excess of $2.5 million.  The stated value of the inventory, however, was purportedly inflated and the inventory was worth much less than the value stated in the financial statements.

On November 24, 1998, plaintiff requested that defendant furnish it with additional financial statements for the years prior to those ending June 30, 1997, and June 30, 1998.  Finkel personally consulted with UMC and sent financial statements for the years ending June 30, 1995, and June 30, 1996, either to plaintiff or to UMC, which then sent them to plaintiff.

On November 24, 1998, plaintiff approved a loan to UMC in the amount of $1.3 million.  According to the complaint, plaintiff specifically relied on the reviewed and projected financial statements prepared and submitted by defendant in making its decision to grant the loan.

On February 26, 1999, Barry Finkel and UMC's president, Morrie Urkov, personally met with plaintiff's president and the senior vice-president to discuss a UMC request to increase the original loan amount by $200,000, to $1.5 million.  At the meeting, Finkel personally provided plaintiff with consolidated financial statements, dated February 4, 1999, for UMC for the six months ending December 31, 1998, which showed over $2.7 million in UMC inventory for both 1997 and 1998.  Finkel reviewed these statements with plaintiff's president and senior vice-president.

The new loan proposal was subsequently presented to plaintiff's board of directors (Board).  The proposal included a full analysis of the financial information contained in the statements prepared by defendant and specifically used the statements for the year ending December 31, 1998, to calculate the loan amount.

 On March 17, 1999, the Board, allegedly acting in substantial reliance on the financial statements prepared by defendant, approved an increase in the amount of UMC's original loan by the requested $200,000 following discussions with Finkel.  Following the loan increase, UMC experienced financial hardship and ceased its operations on November 30, 1999.  The inventory listed in the financial statements by defendant was subsequently liquidated for approximately $50,000. 

ANALYSIS

The purpose of involuntary dismissal under section 2-619 of the Code is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the onset of the case, reserving disputed questions of fact for trial.  
Zedella v. Gibson
, 165 Ill. 2d 181, 185, 650 N.E.2d 1000 (1995); 
Goran v. Glieberman
, 276 Ill. App. 3d 590, 592, 659 N.E.2d 56 (1995).  A motion to dismiss pursuant to section 2-619(a)(9), the section upon which defendant relies, acknowledges the plaintiff's cause of action but presents an affirmative matter that avoids the legal effect of the claim.  735 ILCS 5/2-619(a)(9) (West 2000).  In the instant case, the "affirmative matter" asserted by defendant is the protection of accountants from third-party liability set out in section 30.1 the Act.  225 ILCS 450/30.1 (West 2000).  It provides:

   "No person, partnership or corporation licensed or authorized to practice under this Act or any of its employees, partners, members, officers or shareholders shall be liable to persons not in privity of contract with such person, partnership or corporation, for civil damages resulting from acts, omissions, decisions or other conduct in connection with professional services performed by such person, partnership or corporation, except for:

   (1) such acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations, or

   (2) such other acts, omissions, decisions or conduct, if such person, partnership or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action; provided, however, for the purposes of this subparagraph (2), if such person, partnership or corporation (i) identifies in writing to the client those persons who are intended to rely on the services, and (ii) sends a copy of such writing or similar statement to those persons identified in the writing or statement, then such person, partnership or corporation or any of its employees, partners, members, officers or shareholders may be held liable only to such persons intended to so rely, in addition to those persons in privity of contract with such person, partnership or corporation."  225 ILCS 450/30.1 (West 2000).

Affirmative matters within the meaning of section 2-619(a)(9) of the Code encompass matters in the nature of a defense that negates the plaintiff's cause of action entirely or refutes crucial conclusions of law or conclusions of material fact that are unsupported by the complaint.  
O'Hare Truck Service, Inc. v. Illinois State Police
, 284 Ill. App. 3d 941, 945-46, 673 N.E.2d 731 (1996).   Defendant reasons that the statute requires plaintiff to allege that defendant was aware of the client's intent to benefit or influence a third party at the time the work was prepared by defendant.  According to defendant, plaintiff cannot allege that defendant was aware that its client intended that its work would influence plaintiff because UMC did not have a relationship with Builder's Bank at the time defendant prepared the reviewed financial statements.  Defendant argues that the action was, therefore, properly dismissed because no set of circumstances exist whereby plaintiff could state a cause of action under the statute.

Appellate review of a dismissal pursuant to section 2-619 is 
de
 
novo
 and, thus, a reviewing court need not defer to the circuit court's reasoning.  
Spillyards v. Abboud
, 278 Ill. App. 3d 663, 662 N.E.2d 1358 (1996).  The relevant inquiry on appeal is "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law."  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116-17, 619 N.E.2d 732 (1993).  In making this determination, we will construe all pleadings and supporting documents in a light most favorable to the nonmoving party.  
Mayfield v. ACME Barrel Co.
, 258 Ill. App. 3d 32, 34, 629 N.E.2d 690 (1994).

Plaintiff made, 
inter
 
alia
, the following allegations in its first amended complaint:

   "7.  In connection with the loan and at plaintiff's request, defendant furnished plaintiff with reviewed financial statements for UMC for the years ending June 30, 1998 and June 30, 1997 (dated July 7, 1998) as well as projected consolidated financial statements for the year ending September 30, 1999 (dated October 15, 1998).   

   8.  Plaintiff alleges that in October of 1998, when Finkel prepared projected consolidated financial statements for UMC, Finkel did so knowing that UMC intended to use the projected financial statements (showing UMC to be profitable into the foreseeable future) primarily to influence UMC's lenders.

* * *

   25. Defendant, Barry Finkel & Associates submitted the reviewed and consolidated financial statement to plaintiff in compliance with plaintiff's request for those statements, or UMC's instructions to Finkel to tender the statements to plaintiff, knowing that plaintiff would use those statements in making its decision to grant or deny UMC's loan application.

   26.  As public accountants, defendant owed a duty of due care to all persons who foreseeably would rely on reviewed or consolidated financial statements prepared by defendant, and to perform review services in accordance with the statements on standards for accounting and review services of the American Institute of Certified Public Accountants."

Here, we must determine when third parties may hold an accountant liable for negligent misrepresentation and malpractice when privity does not exist.  In a recent case construing section 30.1 of the Act, this court held that for a third nonprivity party to hold an accountant liable, the party must show: (1) the intent of the client for the accountant's work to benefit or influence the third party; and (2) the accountant's knowledge of that intent.  
Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.
, 281 Ill. App. 3d 719, 724, 667 N.E.2d 543 (1996).  Clearly, plaintiff's allegation in its pleading that defendant owed a duty of due care to all persons who would foreseeably rely on its statements is simply not the law in Illinois.  See also 
Brumley v. Touche, Ross & Co.
, 139 Ill. App. 3d 831, 834, 487 N.E.2d 641 (1985).  

This court has thoroughly reviewed the common law relative to third parties in 
Brumley v. Touche Ross & Co.
,
 123 Ill. App. 3d 636, 463 N.E.2d 195 (1984)
 (
Brumley
), and in a second decision involving the same parties, 
Brumley v. Touche, Ross & Co.
,
 139 Ill. App. 3d 831,
 
487 N.E.2d 641 (1985) (
Brumley II
)
.
  For many years, an accountant was liable in damages for his work only to his client.  The rationale for this strict limitation on liability was announced in 
Ultramares Corp. v. Touche
,
 255 N.Y. 170, 174 N.E. 441 (1931)
.  The 
Ultramares Corp.
 court reasoned that to allow third parties to recover for an accountant's negligence "may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class."  
Ultramares Corp.
,
 255 N.Y. at 179, 174 N.E. at 444.

When 
Brumley
 presented this court with the issue of an accountant's liability to a third party, we reviewed the history of the issue since 
Ultramares
,
 then looked for instruction
 to our supreme court cases in 
Rozny v. Marnul
,
 43 Ill. 2d 54, 250 N.E.2d 656 (1969),
 and 
Pelham v. Griesheimer
,
 92 Ill. 2d 13, 440 N.E.2d 96 (1982)
.  In 
Rozny
, the supreme court recognized that a nonprivity party could bring an action in Illinois against a surveyor for negligent misrepresentation.  The 
Pelham
 court held that an attorney could owe a duty to a third party who was not his client if the attorney was acting at the direction of or on behalf of his client to benefit or influence the third party.   

Relying on these opinions,
 we held in 
Brumley
 that an accountant owed a duty to third parties who relied on his report or opinion if the accountant "was acting at the direction of or on behalf of his client to benefit or influence [the] third-party."  
Brumley
,
 123 Ill. App. 3d at 642, 463 N.E.2d 195.
  In 
Brumley II
 we considered an amended complaint and clarified its previous holding by stating: "[T]o be sufficient plaintiff's complaint must allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff."  
Brumley II
,
 139 Ill. App. 3d at 836, 487 N.E.2d 641. 

One year after the decision in 
Brumley II
, section 30.1 of the Act was enacted.  225 ILCS 450/30.1 (West 2000).  It now governs liability to third parties not in privity with an accountant and sets forth the only circumstances under which an accountant may be sued by a third-party for negligence in rendering his professional services. 

Relative to the pleadings in the case at bar, section 30.1 of the Act provides that an accountant could be held liable to a third party when "such person, partnership or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action." 225 ILCS 450/30.1 (West 2000).  

At the outset we note that the statute is silent on the issue of timing.  However, silence, as it relates to timing in this statute, does not create an ambiguity.  See 
Atkins v. Deere & Co.
, 177 Ill. 2d 222, 230-31, 685 N.E.2d 342 (1997) (finding that the ambiguity did not exist as a result of legislature's silence).  Rather, any ambiguity is created by the parties
' disparate positions on the issue of timing that appear in their briefs.

Plaintiff contends
, based upon the rule enunciated in 
Chestnut
 and in the statute, that an accountant should be held liable for negligent misrepresentation anytime he submits his work product, or vouches for it anew, if he knows that his professional services are being used by his client to influence a specific third party, regardless of when the work product was completed.  

On the other hand, defendant argues that primary intent as described in section 30.1 of the Act should be determined at the time the accountant performs the work for the client or when the accuracy of the work is subsequently verified to the third party.  Defendant cites 
Brumley II
, 139 Ill. App. 3d at 836, and the following language of the statute to support its argument:  "[s]uch other acts, omissions, decisions or conduct, if [the accountant] 
was
 aware that a primary intent of the client 
was
 for the professional services to benefit or influence the particular person bringing the action."  (Emphasis added.)  225 ILCS 450/30.1(2) (West 2000).

Our task is to determine what the legislature intended relative to the timing of the accountant's awareness referenced in the statute.
  In short, when does an accountant need to be aware that his client intends to benefit or influence a third party with his work product for liability to accrue?

 The legislature, in our
 view, could have indicated in the language of the statute when awareness of the client's intent becomes operative, but it did not do so.
  However, where there is no ambiguity in a statute, a court is not at liberty to depart from its plain language
 by reading into it exceptions, limitations, or conditions not expressed by the legislature.
  
Solich v. George & Anna Portes Cancer Prevention Center of Chicago Inc.
, 158 Ill. 2d 76, 83, 630 N.E.2d 820 (1994).
  In terms of timing, we do not read the statute to strictly require that an accountant be made aware of his client's intention to influence or benefit a third party
 only at the time the work product was created as plaintiff contends.
 

The standard announced in 
Pelham
 requires that a plaintiff "prove that the primary purpose and intent of the [client] *** was to benefit or influence the third party."  
Pelham
, 92 Ill. 2d at 21.  In 
Brumley II
, we held that the plaintiff in that case met the 
Pelham
 standard because he alleged that the defendant knew of the plaintiff's reliance on the defendant's reports and that the defendant had subsequently verified its accuracy.  
Brumley II
, 139 Ill. App. 3d at 836.  
We do not, however, read 
Brumley II
 as 
per
 
se
 requiring independent verification in order to meet the standard in 
Pelham
.
  Other conduct may be sufficient to satisfy 
Pelham
.  

Our holding is a narrow one based on the facts of this case.  We believe that the conduct of the professional corporation, Barry Finkel & Associates, outlined below, meets the 
Pelham
 standard and may give rise to liability to plaintiff if properly pled. 

The record indicates that Finkel was told by Urkov that UMC was applying for a loan and requested that financial statements be furnished to plaintiff.  The record further establishes that Finkel personally met with plaintiff on two occasions to discuss issues related to the loan.  In at least one meeting, UMC was seeking an increase of $200,000 on a loan that had already been approved.  In our view, it is reasonable to infer that Finkel played an active role in securing the loan or increasing the loan amount for UMC. 
 From this evidence, a finder of fact could conclude, pursuant to the statute, that defendant knew its work was being used to influence plaintiff at least at the time of the second meeting and that defendant, at minimum, presented its work as accurate.  

Moreover, there is no ambiguity in the requirement of the statute that the third party be "the particular person bringing the action."  225 ILCS 450/30.1 (West 2000).  There can be no question that Barry Finkel knew when he met personally with plaintiff that it was Builder's Bank that the work product was meant to influence.  Since neither party raises this issue, we need not address it in any further detail.  

We further caution that our holding is limited to the facts of this case and we are not expanding the scope of the statute.  We decline to announce an affirmative duty on the part of accountants to seek out third parties for an indeterminate period of time after their work is prepared, repudiating it because the accountant becomes aware, however tangentially, that it may be used to influence or benefit a third party.

Therefore, after a thorough review of the record, we hold that
 section 30.1 of the Act (225 ILCS 450/30.1 (West 2000)) is not an affirmative matter that defeats plaintiff's cause of action pursuant to section 2-619 of the Code
 (735 ILCS 5/2-619 (West 2000)). 
 Accordingly, we reverse the lower court's dismissal of the case and remand this matter to allow plaintiff to amend his complaint in conformance with the proofs elicited in the limited discovery and the interpretation of section 30.1 of the Act (225 ILCS 450/30.1 (West 2000)).

Reversed and remanded.  

GORDON, P.J., and McNULTY, J., concur.

FOOTNOTES
1:
Although this matter was disposed of on a section 2-619 motion to dismiss, the trial court allowed limited discovery pursuant to agreement by counsel.  Barry Finkel and Morris Urkov were deposed and their depositions were made part of the record on appeal.