FREEMAN, FREEMAN AND SALZMAN, P.C., *et al.*, Plaintiffs-Appellants, v. KENNETH LIPPER *et al.*, Defendants (PriceWaterhouse Coopers, LLP, Defendant-Appellee).

First District (3rd Division)    No. 1—03—2743

Opinion filed June 23, 2004.

Richard P. Campbell, of Freeman, Freeman & Salzman, P.C., of Chicago, for appellants.

Emily Nicklin, P.C., Barry E. Fields, and John A. Amash, all of Kirkland & Ellis, L.L.P., of Chicago, for appellee.

JUSTICE SOUTH delivered the opinion of the court:

This appeal arises from an order of the circuit court of Cook County dismissing plaintiffs' claims against defendant, PriceWaterhouse Coopers, LLP, alleging professional malpractice and negligent misrepresentation, pursuant to section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)).

The facts as alleged in the complaint are as follows: plaintiffs were investors and limited partners in Lipper & Company, Inc., Lipper & Company, L.P., and Lipper Holdings, LLC (collectively the Lipper Funds), and invested large sums of money in the Lipper Funds. According to their partnership agreements, the Lipper Funds were required to have their annual financial statements audited by a public accounting firm and to certify the value of each partner's capital account on an annual basis. Defendant PriceWaterhouse Coopers (PWC) was engaged for the purpose of auditing these financial statements and certifying the value of each partner's capital account. Its last report was issued sometime in March 2001. For each year from 1995 through 2000 (the years at issue), PWC audited and certified the value of each plaintiff's capital account; prepared each plaintiff's income tax form (Schedule K—1) from the audited numbers; and delivered these audits and income tax forms to each plaintiff. These audit opinions represented that the securities owned by the Lipper Funds were valued at fair value in accordance with generally accepted accounting practices (GAAP), and that the audits had been performed in accordance with generally accepted auditing standards (GAAS).

In 2002, BDO Seidman (BDO) was hired to revalue the Lipper Funds and the limited partners' interests from 1995 through 2001. As a result of BDO's revaluation, the limited partners, including plaintiffs, learned that some of their accounts had been revalued to zero and that others had been reduced by nearly 50%. Plaintiffs subsequently filed suit against the Lipper Funds and PWC. PWC filed a section 2—615 motion to dismiss on the grounds that plaintiffs were not in privity with them and that the action was barred by section 30.1 of the Illinois Public Accounting Act (225 ILCS 450/30.1 (West

2002)). On August 26, 2003, the trial court dismissed the claims against PWC with prejudice on the basis that PWC did not owe a duty to plaintiffs. This appeal followed.[1]

The issue before this court is whether the trial court erred in granting PWC's section 2—615 motion (735 ILCS 5/2—615 (West 2002)) on the basis that it owed no duty to plaintiffs sufficient to sustain a cause of action for accountant malpractice or negligent misrepresentation. According to its written order, the trial court granted PWC's motion to dismiss because plaintiffs did not state a cause of action for either malpractice or negligent misrepresentation as a third-party beneficiary. In its written order, the trial court based its decision upon *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192 (1999), which involved a suit by a corporation and its employee pension benefit plan against a licensed actuary who furnished certifications between 1988 and 1993 to a retirement plan established by the corporation for its employees.

A motion to dismiss under section 2—615 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615 (West 2002)) challenges only the legal sufficiency of the complaint. *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 85 (2002). The critical inquiry is whether the allegations of the complaint, when considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted. *Jarvis*, 201 Ill. 2d at 86. In ruling on a section 2—615 motion, a court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences therefrom that are favorable to the pleader. *American National Bank & Trust Co. v. City of Chicago*, 192 Ill. 2d 274, 279 (2000). A cause of action should not be dismissed on the pleadings unless it appears that no set of facts can be proved which will entitle the plaintiff to recover. *Loftus v. Mingo*, 158 Ill. App. 3d 733, 738 (1987). We review the dismissal of a complaint under section 2—615 *de novo*. *Jarvis*, 201 Ill. 2d at 86.

■ Section 30.1 of the Illinois Public Accounting Act was enacted in 1986 and controls the liability of accountants to third parties not in privity of contract with them. *Chestnut Corp. v. Pestine, Brinati, Gamer, Ltd.*, 281 Ill. App. 3d 719, 722 (1996). The Act provides:

> "No person, partnership or corporation licensed or authorized to practice under this Act or any of its employees, partners, members, officers or shareholders shall be liable to persons not in privity of contract with such person, partnership or corporation, for civil

---

[1]The Lipper Funds are not parties to this action; the partnership agreement called for arbitration in handling their claims and those claims are held pending the outcome of the arbitration.

damages resulting from acts, omissions, decisions or other conduct in connection with professional services performed by such person, partnership or corporation, except for:

(1) such acts, omissions, decisions or conduct that constitute fraud or intentional misrepresentations, or

(2) such other acts, omissions, decisions or conduct, if such person, partnership or corporation was aware that a primary intent of the client was for the professional services to benefit or influence the particular person bringing the action; provided, however, for the purposes of this subparagraph (2), if such person, partnership or corporation (i) identifies in writing to the client those persons who are intended to rely on the services, and (ii) sends a copy of such writing or similar statement to those persons identified in the writing or statement, then such person, partnership or corporation or any of its employees, partners, members, officers or shareholders may be held liable only to such persons intended to so rely, in addition to those persons in privity of contract with such person, partnership or corporation." 225 ILCS 450/30.1 (West 2002).

This court has previously held that a third party may state a cause of action under the statute even though there is no writing. However, when the accountant writes to no one, the plaintiff must show the intent of the client and knowledge of the accountant of that intent. *Chestnut Corp.*, 281 Ill. App. 3d at 724. Thus, we must examine the allegations of the complaint to determine whether plaintiffs satisfied the primary intent rule.

In *Gallagher*, the case upon which the trial court relied, another division of this court found that the complaint in that case did not sufficiently meet the primary intent rule. While the complaint stated that the accountant, Russ, prepared the actuarial valuations "for the plaintiff's use" in determining the amounts necessary to meet the plan's funding obligations, the other allegations in the complaint contradicted the notion that Russ was engaged by its client with the primary intent or purpose of benefitting plaintiff; rather, his engagement was only for the benefit of the plan, not to protect plaintiff's financial health. *Gallagher*, 309 Ill. App. 3d at 198.

In order for us to determine whether the instant complaint sufficiently meets the primary intent rule, a detailed examination of those allegations pertaining solely to PWC is required.

Counts V and VI of the complaint were directed solely against defendant PWC. In count V, plaintiffs alleged that PWC committed professional malpractice by conducting its audits contrary to GAAS and GAAP, the professional standards that governed its audits. Plaintiffs argued that PWC breached its duty of care to the limited

partners and that it knew that the limited partners relied on its audit reports. The complaint alleged that PWC sent to each partner, including all plaintiffs, a copy of each fund's financial statements and the related audit opinions, supplementary Schedule 1, which set forth the value of each partner's capital account based on the market value of each asset in the fund. The claims were that plaintiffs relied on PWC's audit opinions in the preparation of their taxes and in determining whether they should continue investing in the Lipper Funds, and that they were harmed economically by those decisions.

Count VI, based on negligent misrepresentation, set forth similar allegations. To support their allegations of negligent misrepresentation, plaintiffs alleged that PWC made false material misrepresentations in its audit reports for the years 1995 to 2000, and it knew or should have known that its representations were false. Plaintiffs also alleged that PWC supplied those false representations to them, knowing that they would rely on them. Plaintiffs claimed that they suffered significant investment losses as a result of relying on PWC's false audit reports.

Plaintiffs contend that they are entitled to bring suit under section 30.1 of the Illinois Public Accounting Act (225 ILCS 450/30.1 (West 2002)) because PWC prepared valuations of its capital accounts and sent those valuations, along with its audits, to each limited partner personally. Plaintiffs also contend that the trial court erred by failing to consider that section in its determination.

■ Plaintiffs are correct in their assertion that section 30.1 applies to their suit under both the malpractice and negligent misrepresentation counts against PWC and that the trial court applied the wrong standard. In its written order, the trial court stated that plaintiffs failed to "sufficiently allege Defendant PWC owed a duty to Plaintiff[s] in this case." However, the correct standard as enunciated in section 30.1 is not whether PWC owed a duty to plaintiffs but whether it was aware that it was a primary intent of its client, Lipper, that its professional services would benefit or influence plaintiffs.

Paragraph 6 of plaintiffs' complaint indicates that they sought to recover their investment losses from PWC, which audited the Lipper Funds and repeatedly certified the funds' financial condition from 1995 to 2000, and that PWC negligently misrepresented that the Lipper Funds' financial statements were fairly presented in accordance with GAAP.

Paragraph 21 of the complaint alleged that PWC's New York office audited the financial statements of the Lipper Funds from 1995 to 2000 and issued clean audit opinions on those financial statements; that it also issued clean audit opinions on each investment partner's

capital accounts for those years; and that PWC addressed and sent its clean audit opinions to the partners who invested in those funds, including plaintiffs.

Paragraph 44 alleged that PWC represented in each of its annual audit opinions that it had conducted an audit in accordance with GAAS and that the financial statements of the Fixed Income Fund and Lipper Convertibles and the related Schedule 1 were fairly stated in accordance with GAAP as of each year ending December 31, 1995, 1996, 1997, 1998, 1999 and 2000; and that each of PWC's representations was false.

Paragraph 45 alleged that PWC is in the business of supplying audit opinions to investors for guidance with their investment decisions; PWC knew that plaintiffs would rely upon PWC's audit opinions, the funds' audited financial statements and the related schedules; and that plaintiffs did rely on PWC's representations in the audit opinions, the audited financial statements and related schedules in deciding to invest in and continue to reinvest in Lipper Convertibles and the Fixed Income Fund.

Paragraph 46 alleged that plaintiffs, relying on defendants' representations that their investment accounts were growing each year, continued to invest in the Lipper Funds.

Paragraph 48 alleged that PWC prepared federal income tax Schedules K—1 for plaintiffs and the limited partners each year; that each Schedule K—1 purported to reflect each partner's proportionate share of the partnership's net income for the year, as well as each partner's capital account balance at the beginning and end of each year; and that PWC's representations as to the partners' capital accounts in each Schedule K—1 were false because they were based on false valuations.

Paragraph 49 alleged that plaintiffs relied on the information in the Schedules K—1 each year in preparing their tax returns and in paying taxes on their proportionate share of the net realized and unrealized gains as reflected in the increase in the market values of the securities held by the partnership, and because those market values were materially overstated, plaintiffs overpaid income taxes for the years 1995 to 2000 as a result of PWC's misrepresentations.

Paragraph 50 alleged that PWC knew that its audit reports, the Lipper Funds' audited financial statements, the supplementary Schedule 1 and the income tax Schedule K—1 were used by plaintiffs for the purpose of making investment decisions and paying income taxes; PWC knew that plaintiffs would rely on the information in those reports to make investment and reinvestment decisions and to determine their income taxes; and that by directly addressing its audit

reports with the audited financial statements, Schedules 1 and Schedules K—1 to plaintiffs, PWC confirmed its understanding that plaintiffs were relying on and benefitting from that information prepared and disseminated by PWC.

Count V (paragraphs 94 through 108), alleged (among other things) that PWC issued audit opinions on the Lipper Funds' financial statements and certified to the partners of each of those funds that the financial statements fairly presented the financial condition of each of those funds in accordance with GAAP and that PWC conducted each of its audits in accordance with GAAS; that PWC owed plaintiffs a duty to conduct its audits in accordance with applicable professional standards and to exercise reasonable care in the conduct of its audits because it knew plaintiffs were relying on PWC's audit reports and the audited financial statements in making investment decisions concerning the Lipper Funds; and PWC also knew that plaintiffs were relying on the Schedules K—1 prepared by PWC in calculating income taxes.

Count VI (paragraphs 109 through 110) alleged that PWC knew or should have known that its representations that it had conducted audits in accordance with GAAS and financial statements in accordance with GAAP were false; PWC was in the business of supplying audit reports to investors for guidance in their business transactions and intended to supply this information to plaintiffs, knowing that plaintiffs would rely on those representations in deciding to invest in and continuing to reinvest in the Lipper Funds.

Based upon those allegations and factual inferences, which must be taken in the light most favorable to plaintiffs, PWC knew that its audit reports and other financial statements were being prepared for the benefit of the Lipper Funds investors, and those allegations are sufficient to state a cause of action for both malpractice and negligent misrepresentation upon which relief can be granted under section 30.1 of the Illinois Public Accounting Act.

For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

PRESIDING JUSTICE HOFFMAN, specially concurring:

I agree with my colleagues and find that the plaintiffs pled legally sufficient causes of action against PriceWaterhouse Coopers, LLP (PWC), for accounting malpractice and negligent misrepresentation, and, as a consequence, the trial court's order dismissing counts V and VI of their complaint must be reversed and the cause remanded for

further proceedings. I write separately to set forth my reasons for so concluding and to articulate what I believe is the proper way to raise section 30.1 of the Illinois Public Accounting Act (Act) (225 ILCS 450/ 30.1 (West 2002)) in defense of an action against an accountant brought by parties with whom the accountant is not in privity.

PWC filed a section 2—615 (735 ILCS 5/2—615 (West 2002)) motion seeking the dismissal of counts V and VI of the plaintiffs' complaint which asserted common law malpractice and negligent misrepresentation claims against it. As such, the only issue before the court was whether the factual allegations in the counts under attack, when considered in the light most favorable to the plaintiffs, were sufficient to state causes of action upon which relief can be granted. *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172 (1997).

Both counts V and VI of the plaintiffs' complaint are predicated on allegations of negligence on the part of PWC. To be legally sufficient, complaints alleging negligence-based torts must set out facts establishing a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately resulting from that breach. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 197, 721 N.E.2d 605 (1999). The elements of breach of duty and damage are not at issue in this case. "The determination of the duty—whether the defendant and the plaintiffs stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiffs—is an issue of law for the determination of the court." *Pelham v. Griesheimer*, 92 Ill. 2d 13, 18-19, 440 N.E.2d 96 (1982).

In *Brumley v. Touche Ross & Co.*, 123 Ill. App. 3d 636, 642, 463 N.E.2d 195 (1984) (*Brumley I*), the court held that an accountant owed a duty to third parties who relied upon his reports or opinions if the accountant "was acting at the direction of or on behalf of his client to benefit or influence [the] third-party." The issue was further clarified in a subsequent decision involving the same parties. See *Brumley v. Touche, Ross & Co.*, 139 Ill. App. 3d 831, 487 N.E.2d 641 (1985) (*Brumley II*). In *Brumley II*, the court determined that "to be sufficient plaintiff's complaint must allege facts showing that the purpose and intent of the accountant-client relationship was to benefit or influence the third-party plaintiff." *Brumley II*, 139 Ill. App. 3d at 836.

My reading of counts V and VI of the plaintiffs' complaint leads me to conclude that they allege facts which, when considered in the light most favorable to the plaintiffs, are sufficient to satisfy the pleading requirements necessary to establish the element of duty in negligence-based claims against an accountant by a nonclient third-

party as set out in *Brumley I* and *Brumley II*. The plaintiffs have alleged, *inter alia*, that: the Lipper Funds were required to have their annual financial statements audited by a public accounting firm and to certify the value of each partner's capital account; PWC was engaged for the purpose of auditing the financial statements and certifying the value of the capital accounts; PWC addressed its opinions and sent them directly to each partner along with a schedule setting forth the value of the individual partner's capital account; and PWC knew that the partners would rely upon the audited financial statements and related schedules, including the ones showing the value of their individual capital accounts, for the purpose of making investment decisions and paying income taxes. When these allegations are taken as true, and all reasonable inferences therefrom are drawn in favor of the plaintiffs (see *Your Style Publications, Inc. v. Mid Town Bank & Trust Co. of Chicago*, 150 Ill. App. 3d 421, 424, 501 N.E.2d 805 (1986)), they could support the conclusion that, in rendering its professional services, PWC was acting at the direction of the Lipper Funds for the purpose of benefitting or influencing the plaintiffs as partners in those funds. Further, the plaintiffs have alleged that they relied upon the financial statements audited by PWC and the schedules setting forth the value of their capital accounts.

In moving to dismiss counts V and VI of the plaintiffs' complaint, PWC relied exclusively upon the provision of section 30.1 of the Act which provides, in relevant part, that an accountant is not liable to a person not in privity of contract unless the accountant was aware that a primary intent of its client was for the accountant's professional services to benefit or influence the particular person bringing the action. See 225 ILCS 450/30.1 (West 2002). PWC argued that counts V and VI of the plaintiffs' complaint failed to contain allegations of fact satisfying the requirements of section 30.1 and, therefore, they were deficient as a matter of law.

My colleagues find that the allegations in the plaintiffs' complaint and the inferences which must be drawn therefrom do in fact support the conclusion that PWC knew that its audit reports and other financial statements were being prepared for the benefit of the partners of the Lipper Funds and that a primary intent of the Lipper Funds was for PWC's professional services to benefit or influence the plaintiffs as partners. Based upon the reasons I have already set forth, I agree with that conclusion. However, I do not believe that the plaintiffs were required to allege knowledge on the part of PWC of the intent of the Lipper Funds in order to sufficiently plead actions for malpractice or negligent misrepresentation.

Accounting malpractice and negligent misrepresentation are com-

mon law causes of action. In *Brumley I* and *Brumley II*, this court fixed the circumstances under which an accountant owes a duty to a nonclient third-party who relies upon the accountant's reports or opinions. When the legislature enacted section 30.1 of the Act, it created no new duties on the part of accountants to persons with whom they are not in privity of contract. Rather, that section of the Act provides that an accountant will not be liable for acts under circumstances which otherwise would have fallen within their common law duty. As such, section 30.1 creates a defense to certain actions against accountants by persons with whom they are not in privity which, when properly pled by the accountant, may act to bar a plaintiff's right to recovery. My analysis in this regard is akin to the treatment accorded the provisions of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 2002)). See *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377-78, 657 N.E.2d 887 (1995); *Ramirez v. Village of River Grove*, 266 Ill. App. 3d 930, 932, 641 N.E.2d 7 (1994). The defense is affirmative in nature and, therefore, should be the defendant-accountant's obligation to plead and prove. See *Albers v. Breen*, 346 Ill. App. 3d 799, 806, 806 N.E.2d 667 (2004).

I believe that, in order to state a good and sufficient negligence-based action against an accountant, a nonclient third-party need only comply with the pleading requirements set forth in *Brumley I* and *Brumley II*. If the accountant-defendant wishes to rely upon the provisions of section 30.1 as a defense to liability and allege a lack of knowledge of a primary intent on the part of its client to benefit or influence the plaintiff, it can do so by means of an affirmative defense or a motion for involuntary dismissal pursuant to section 2—619(a) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 2002)) as was done in *Builders Bank v. Barry Finkel & Associates*, 339 Ill. App. 3d 1, 790 N.E.2d 30 (2003).

The distinction I have drawn might seem overly technical, but it is extremely important in determining who has the burden of proving whether the accountant did or did not know whether a primary intent of its client was for the accountant's professional services to benefit or influence the nonclient plaintiff.

JUSTICE KARNEZIS, specially concurring:

The question presented in this case is whether the allegations of malpractice and negligent representation as set forth in counts V and VI of plaintiffs' complaint were legally sufficient to state a cause of action against defendant PriceWaterhouse Coopers, LLP (PWC).

In dismissing count V of plaintiffs' complaint, the trial court held

that "as a threshold matter, plaintiffs must allege the existence of a relationship between the parties that gives rise to a duty." The court then went on to state that, in effect, because plaintiffs did not allege that PWC's "primary intent" was to benefit or influence plaintiffs, they "failed to establish that PWC owed a duty to plaintiffs." Essentially, the court equated "primary intent" with "duty," finding that if plaintiffs failed to sufficiently allege primary intent, they then failed to establish duty. The trial court then went on to consider count VI of plaintiffs' complaint and, based on the above reasoning, concluded that plaintiffs failed to "adequately" allege that defendant had a duty to protect the financial interests of plaintiffs.

To determine whether the trial court properly granted PWC's motion to dismiss, we must ultimately consider whether it was necessary for plaintiffs to allege in their complaint that the "primary intent" of the Lipper Funds was for PWC's services to "benefit or influence" plaintiffs. I respectfully agree with Presiding Justice Hoffman that this question must be answered in the negative. In order to state a common law cause of action for malpractice and/or negligent misrepresentation, plaintiffs must allege duty, breach of duty and injury proximately caused by the breach. Plaintiffs are not required to plead "primary intent." As stated by Presiding Justice Hoffman, "primary intent," is properly pled as an affirmative defense provided by section 30.1 of the Illinois Public Accounting Act (225 ILCS 450/ 30.1 (West 2002)). I concur in the result reached by Justice South and join in the reasoning characterizing section 30.1 as an affirmative defense as set out by Presiding Justice Hoffman.